STATE OF OKLAHOMA ⎱ S.S.
CLEVELAND COUNTY ⎰

IN THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA

**FILED**

DEC 05 2023

In the office of the
Court Clerk MARILYN WILLIAMS

| | |
|---|---|
| DARLA NORDSTROM, indivually, and as next of kin of RUSS NORDSTROM, deceased, ) ) ) ) ) | |
| *Plaintiffs,* ) | |
| vs. ) | Case No. CJ-2023-1494 |
| FARMERS INSURANCE COMPANY, ) INC., ) ) ) | |
| *Defendant.* ) | |

## PLAINTIFFS' ORIGINAL PETITION

COMES NOW DARLA NORDSTROM, indidually, and as next of kin of RUSS NORDSTROM, deceased, (hereinafter the "Nordstroms" or "Plaintiffs"), and for their causes of action against Defendant, FARMERS INSURANCE COMPANY, INC., (hereinafter referred to as "Farmers" or "Defendant") hereby states as follows:

### STATEMENT OF FACTS

1. Plaintiffs, Darla Nordstrom and Russ Nordstrom (now deceased), at the times relevant had and have an insurable interest in property located at 8750 Payton Ln., Newalla, Oklahoma 74857-8451 (the "Property").

2. Defendant, Farmers Insurance Company, Inc., is a corporation incorporated under the laws of the State of Kansas, and is an insurance company registered to engage in the business of insurance in the state of Oklahoma. Farmers can be served with process by serving Oklahoma Insurance

1

```
EXHIBIT
   1
```

Commissioner, Glen Mulready, via certified mail at Oklahoma Insurance Department, Attention: Legal Division, 400 NE 50th Street, Oklahoma City, Oklahoma 73105. Service is requested via certified mail, with a return receipt requested.

3.   Plaintiffs entered into a contract for insurance with Defendant to provide coverage for the Property and its contents. Plaintiffs' insured Property is located in Cleveland County, Oklahoma.

4.   Defendant, Farmers Insurance Company, Inc. issued the Homeowner's Policy of insurance, Policy No. 303509247 (the "Policy"), to the Plaintiffs which covers direct physical loss to Plaintiffs' Property. The Policy was in effect from November 8, 2022 through November 8, 2023 (the "Policy Period").

5.   Defendant represented to Plaintiffs that it would conduct itself in accordance with Oklahoma law and would fully and faithfully investigate and pay claims. Plaintiffs relied on said representations.

6.   During the Policy Period, the Property was struck by a severe wind and hail storm that swept through Cleveland County. The hail and wind storm hit the Property and damaged a the roof and many other items at the Property.

7.   The Nordstroms timely and properly submitted a claim to Defendant for property damage incurred due to the hail and wind storm.

8.   Defendant acknowledged the claim by assigning the claim claim number 5021411821-1-1 (the "Claim"). Defendant then assigned the Claim to Field

2

Claims Representative Andrea Cuevas ("Cuevas").

9.    Soon thereafter Defendant inspected the Property and found covered damage to the roof caused by a severe hail and wind storm.

10.   Specifically, Defendant found that a large portion of the shingles on the roof were damaged by a covered loss and would need to be removed and replaced because of the damage.

11.   Following the inspection Defendant issued a decision letter on or about February 24, 2023, stating that while there was covered damage to the Property the damage fell below the Nordstroms' deductible.

12.   However, during Defednant's evaluation of the Claim Defendant failed to properly research the facts of the Claim including the fact that the shingles at the Property were the only shingles produced with those dimensions and are now discontinued and no longer avlaiable.

13.   Therefore, any new shingles purchased to replace the damaged shingles would not match the dimensions of the remaining undamaged shingles on the Property's roof and therefore can not be properly installed.

14.   As a result, the method of repair Defendant claimed was appropriate to return the Nordstroms' home back to its preloss condition would in fact leave the Nordstroms with an improperly constructed roof far more susceptible to future damage from wind storms, and unable to properly shed water.

15.   Defendant failed to reasonably evalute the Claim and consider all of the

3

vital facts such as whether or not the shingles it claimed would repair the Property are compatible with the existing shingles.

16. In response the Nordstroms sent Defendant a detailed letter on or about May 15, 2023 explaining that it would not be possible to properly install any new shinlges alongside the remaining shingles and that the entire roof would need to be replaced in order to return the Property to its preloss condition.

17. In support, the Nordstroms provided an NTS shingle report showing the shingle was discontinued and that there is "No repair product. No similar replacement product."

18. Additionally, the Nordstroms addressed Defendant's only reason for why coverage of the entire roof was excluded stating that matching appearance is excluded under the Policy and therefore Defendant does not owe for the cost to replace the roof.

19. The Nordstroms made it clear the additional cost to repair the roof at the Property was not becsause of an appearance issue with the original shingles versus new shingles, but because the shingles are not compatible with one another.

20. To further support their position the Nordstroms also provided the installation instructions from the manufacture of the original shingles that clearly states not to "mix" the shingles different in size on the same roof.

21. On or about May 16, 2023 Defedant responded simply stating that it would

4

not be making any further changes to the estimate.

22. Due to the lack of any explanantion for why Defednant's method of repair was still appropriate in the face of installation manuals and material reports that disproved Defendant's method the Nordstorms requested a letter in writing addressing their facts.

23. Despite multiple requests Defendant never provided a repsonse to the Nordstroms addressing their concerns and documents.

24. Defendant has continuously ignored their insureds' concerns, disregarded vital facts, and failed to address documents directly proving that Defendant's method of repair is not only inadequate, but not possible.

25. Defendant has shown an intent to underpay the Nordstroms Claim in order to minimize its liability, despite owing for all covered damages under the Policy and the reasonable and necessary costs to return the Property back to its preloss condition.

26. Defendant denied the claim based on its own outcome oriented investigation and failure to properly evalute the Claim by ignoriong vital facts and documents and its insureds' concerns.

27. Pursuant to 12 O.S. § 2004(F), this Court has personal jurisdiction over Defendants.

28. Venue is proper in Cleveland County under 12 O.S. § 134 because all or a substantial part of the events or omissions giving rise to the claim occurred in this Couty and the insured loss at issue occurred in this County.

## CAUSES OF ACTION

### I.   BREACH OF CONTRACT

29.   Plaintiffs adopt and incorporate by reference paragraphs 1 through 28 above as if fully plead herein, and for further claims against the Defendant alleges as follows:

30.   Plaintiffs entered into a contract for insurance with Defendant to provide coverage for the dwelling and personal property.

31.   At all times material hereto, the policy of insurance, Policy No. 303509247 were in full force and effect.

32.   Plaintiffs provided timely and proper notice of their Claim for covered Property damage as a result of the severe hail and wind storm that hit the home during the Policy Period.

33.   Plaintiffs have complied with the terms and conditions and all conditions precedent under the policies of insurance.

34.   As to the the windstorm/hailstorm damages that underlie this lawsuit, Defendant FARMERS INSURANCE COMPANY, INC. denied the the majority of the Claim stating that it did not owe for the costs to match the appearance for the shingles on the roof.

35.   Conversely, the Nordstorms explainied that it was not claiming damages based on the matching of the appearance of the shingles to the home, but instead the damages to properly repair and replace the damage at the

6

Property and return the Property to its preloss condition as promised under the Policy. The cost to properly repair the Property, as contracted for, is substantially more than the amount paid to date by Defendant.

36. By failing to fully indemnify the Nordstroms for losses covered by the contract of insurance, Defendant has breached its contractual obligations under the terms and conditions of the insurance contract with the Nordstroms by failing to pay the Nordstroms all benefits owed.

37. Defendant's conduct is the proximate cause of the Nordstroms' damages.

38. As a result of Defendant's breach of contract the Nordstroms have sustained financial losses and have been damaged.

39. The conduct of Defendant was intentional, willful, malicious, and in reckless disregard to the rights of the Nordstroms, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

## II.    TORTIOUS BAD FAITH

40. Plaintiffs adopt and incorporate by reference paragraphs 1 through 39 above as if fully plead herein, and for further claim against Defendant and alleges as follows:

41. Defendant owed a duty to the Nordstroms to deal fairly and act in good faith.

42. Defendant breached its duty to deal fairly and act in good faith by engaging in the following acts and/or omissions:

7

a. Failing to pay the full and fair amount for the property damage sustained by Plaintiffs as a result of the wind and hail storm that hit and damaged the Property during the Policy Period in accordance with the terms and conditions of the insurance poilcy;

b. Failing to properly evalute the Claim and consider all vital facts:

c. Failing to properly research whehter its suggested repair method was even possible;

d. Ignoring the Nordstroms' multiple requests for a written response to their concerns;

e. Failing to address the documents that show Defendant's suggested repair method is not possible and ignoring the issue;

f. Applying an inappropriate exclusion endorsement that only excludes any increase in costs for matching the appearance of material despite the issue being one of proper installation and incompatible materials;

g. Intentionally working the Claim in a manner designed to undervalue the covered damages and minimize Defendant's liability on the Claim despite clear evidence of covered damages in excess of Defendant's estimate;

h. Paying nothing on the Claim despite clear evidence of covered damages which the Nordstroms' have provided doumentation of thereby unreasonably delaying all benefits owed under the Policy.

i. Violating the Unfair Claims Settlement Practices Act, 36 O.S.

§§1250.1-1250.16 by wrongfully, intentionally and repeatedly withholding benefits and coverages due and owing to the Plaintiffs under the terms and conditions of the insurance Policy.

j. Forcing Plaintiffs to obtain legal counsel to recover insurance benefits entitled to under the terms and conditions of the insurance contract.

43. Defendant's obligations to the Nordstorms arise from both express written terms under the insurance Policy and under the Oklahoma Insurance Code as well as implied obligations under Oklahoma law.

44. Defendant's failure to implement and/or follow the statutory impositions under the Oklahoma Insurance Code constitute bad faith.

45. Defendant's conduct is a material breach of the terms and conditions of the insurance contract entered into with the Nordstorms and constitutes bad faith.

46. As a direct and proximate result of Defendant's unfair claims handling conduct, the Nordstorms' Claim was unnecessarily delayed, inadequately investigated, and wronfgully underpaid. Said actions resulted in additional profits and a financial premium to Defendants and damage to Plaintiffs.

47. As a result of the Defendant's conduct, the Nordstorms have sustained financial losses.

48. The conduct of Defendant was belived to be intentional, willful, malicious, and in reckless disregard to the rights of Plaintiffs, and said conduct is

9

sufficiently egregious in nature to warrant the imposition of punitive damages.

49.    The amount of punitive damages sought to be recovered is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

50.    The Nordstorms further allege Defendant benefited from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the the Nordstorms.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs pray for judgment against Defendant, FARMERS INSURANCE COMPANY, INC., as follows:

a.    Payment of all contractual benefits for all coverages afforded to Plaintiffs under the Policy for covered damage to their Property from a wind and hail strom that hit the Property during the Policy Period, together with interest on all amounts due;

b.    Disgorgement of the increased financial benefits derived by Defendants as a direct result of Defendants' wrongful or intentional, willful, malicious and/or reckless conduct;

c.    Actual and punitive damages each in an amount in excess of ten thousand dollars ($10,000.00); and

d.    Attorneys' fees, costs and interest, including pre-judgment and post-

judgment interest.

Respectfully submitted,

Terry M. McKeever
OBA#21751
tmm@fylaw.com

FOSHEE & YAFFE LAW FIRM
P.O. Box 890420
Oklahoma City, Oklahoma 73189
Telephone:     (405) 378-3033

ATTORNEY FOR PLAINTIFFS

ATTORNEYS' LIEN CLAIMED
JURY TRIAL DEMANDED

11